UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**SAMUEL & STEIN**
David Stein (DS 2119)
38 West 32nd Street
Suite 1110
New York, New York 10001
(212) 563-9884
dstein@samuelandstein.com

Attorneys for Plaintiffs, Individually
and on behalf of all others similarly
situated

| | |
|---|---|
| Guillermo Campos and German Escobar, on behalf of themselves and all other persons similarly situated,<br><br>    Plaintiffs,<br><br>         - vs. –<br><br>Midtown Auto Care Service Inc., S.T.A. Parking Corp., Michael Zacharias, and Kathleen McLeod,<br><br>    Defendants. | DOCKET NO. 18-cv-4936<br><br>**COMPLAINT** |

Plaintiffs Guillermo Campos and German Escobar, by and through their undersigned attorneys, for their complaint against defendants Midtown Auto Care Service Inc., S.T.A. Parking Corp., Michael Zacharias, and Kathleen McLeod, allege as follows, on behalf of themselves and on behalf of all other persons similarly situated:

**NATURE OF THE ACTION**

1. Plaintiffs Guillermo Campos and German Escobar allege on behalf of themselves and on behalf of other similarly situated current and former employees of defendants Midtown Auto Care Service Inc., S.T.A. Parking Corp., Michael Zacharias, and Kathleen McLeod, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are entitled to: (i) unpaid wages from defendants for overtime work for which they did not receive overtime premium pay as required by law, and (ii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because defendants' violations lacked a good faith basis.

2. Plaintiffs further complain that they are entitled to (i) back wages for overtime work for which defendants willfully failed to pay overtime premium pay as required by the New York Labor Law §§ 650 et seq. and the supporting New York State Department of Labor regulations; (ii) liquidated damages pursuant to New York Labor Law for these violations; and (iii) compensation for defendants' violation of the Wage Theft Prevention Act.

**THE PARTIES**

3. Plaintiff Mr. Campos is an adult individual residing in Passaic, New Jersey.

2

4. Plaintiff Mr. Escobar is an adult individual residing in Queens, New York.

5. Plaintiffs consent in writing to be parties to this action pursuant to 29 U.S.C. § 216(b); their written consents are attached hereto and incorporated by reference.

6. Upon information and belief, defendant Midtown Auto Care Service Inc. ("Midtown") is a New York corporation with a principal place of business at 415 West 45th Street, New York, New York.

7. Upon information and belief, defendant S.T.A. Parking Corp. ("STA") is a New York corporation with a principal place of business at 433 East 76th Street, New York, New York.

8. At relevant times, defendants Midtown and STA (collectively, the "Parking Garages") have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207(a).

9. Upon information and belief, at all relevant times, the Parking Garages have had gross annual revenues in excess of $500,000.00.

10. Upon information and belief, at all relevant times herein, the Parking Garages have used goods and materials

produced in interstate commerce, and have employed at least two individuals who handled such goods and materials.

11. At all relevant times, the Parking Garages shared common ownership and management, common offices and personnel, and operated for a common business purpose.

12. Upon information and belief, at all relevant times, the Parking Garages have constituted a single "enterprise" as defined in the FLSA.

13. Upon information and belief, defendant Michael Zacharias is an owner or part owner and principal of the Parking Garages, who has the power to hire and fire employees, set wages and schedules, and maintain their records.

14. Defendant Michael Zacharias was involved in the day-to-day operations of the Parking Garages, and played an active role in managing the businesses.

15. Upon information and belief, defendant Kathleen McLeod is an owner or part owner and principal of the Parking Garages, who has the power to hire and fire employees, set wages and schedules, and maintain their records.

16. Defendant Kathleen McLeod was involved in the day-to-day operations of the Parking Garages, and played an active role in managing the businesses.

4

17. For example, defendant Michael Zacharias personally hired plaintiffs, while defendant Kathleen McLeod set their schedule and pay.

18. Defendants constituted "employers" of plaintiffs as that term is used in the Fair Labor Standards Act and New York Labor Law.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because defendants' businesses are located in this district.

## COLLECTIVE ACTION ALLEGATIONS

21. Pursuant to 29 U.S.C. § 207, plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of a collective group of persons defined as follows:

> All persons who are or were formerly employed by defendants in the United States as parking attendants at any time since May 29, 2015, to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA, and who were not paid overtime compensation at rates at least one-

5

and-one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

22. The Collective Action Members are similarly situated to plaintiffs in that they were employed by defendants as parking attendants, and were denied premium overtime pay for hours worked beyond forty hours in a week.

23. They are further similarly situated in that defendants had a policy and practice of knowingly and willfully refusing to pay them overtime.

24. Plaintiffs and the Collective Action Members perform or performed the same primary duties, and were subjected to the same policies and practices by defendants.

25. The exact number of such individuals is presently unknown, but is known by defendants and can be ascertained through appropriate discovery.

**FACTS**

26. At all relevant times herein, defendants owned and operated parking garages in Manhattan, including one located at 45th Street and one located at 76th Street.

27. Mr. Campos has been employed by defendants since approximately October 2012.

28. Originally Mr. Campos was employed at both the 76th Street and 45th Street locations, working three days at each

6

garage each week, but since 2014 he has only worked at the 45th Street location.

29. Mr. Escobar has been employed by defendants since approximately 2011.

30. Originally Mr. Escobar worked full time at the 76th Street location, but then in about 2012 he was transferred to the 45th Street location full time. However, even after that transfer, he continued to be assigned to work at the 76th Street location to cover for absent employees.

31. Plaintiffs were employed as parking attendants.

32. Plaintiffs' work was performed in the normal course of defendants' business and was integrated into the business of defendants, and did not involve executive or administrative responsibilities.

33. At all relevant times herein, plaintiffs were employees engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

34. Plaintiffs worked regular schedules of six days per week throughout their employment.

35. Mr. Campos originally worked seven-hour days, for a total of about 42 hours per week, but after about six months his hours were extended, and he began working days of either 10 or 11 hours, for a total of roughly 63 hours per week.

7

Commencing in about 2017, Mr. Campos began working a mixture of seven-, nine-, eleven-, and twelve-hour days, for a total of approximately 62 hours per week each week.

36. Mr. Escobar generally worked two days of twelve hours, three days of eight hours, and one day of six hours, for a total of around 54 hours per week each week of his employment.

37. Plaintiffs were paid on an hourly basis throughout their employment.

38. Mr. Campos started at $10.00 per hour, received a raise to $11.00 per hour in about 2012, and a raise to $12.00 per hour in 2016.

39. Mr. Escobar started at $10.00 per hour, and received a raise to $12.00 per hour in 2017.

40. These rates did not vary based on plaintiffs' hours worked; they were paid the same rates for all hours worked regardless of the number of hours they worked in a week.

41. Defendants failed to pay Mr. Campos or Mr. Escobar an overtime "bonus" for hours worked beyond 40 hours in a workweek, in violation of the FLSA, the New York Labor Law, and the supporting New York State Department of Labor regulations.

42. Defendants' failure to pay Mr. Campos or Mr. Escobar the proper overtime bonus for overtime hours worked was willful, and lacked a good faith basis.

43. Mr. Campos and Mr. Escobar were paid partly by cash and partly by check.

44. When plaintiffs' employment began, they were paid solely in cash. After a period of time – about three years for Mr. Campos and one year for Mr. Escobar – they began receiving their respective pay via a combination of cash and check each week of their employment.

45. The checks that Mr. Campos and Mr. Escobar received were business checks rather than payroll checks, and plaintiffs did not receive accurate paystubs or wage statements with their pay. Rather, on the occasions when they received wage statements, those wage statements reflected only the check portion of their pay.

46. Defendants failed to provide Mr. Campos or Mr. Escobar with written notices providing the information required by the Wage Theft Prevention Act – including, *inter alia*, defendants' contact information, their regular and overtime rates, and intended allowances claimed – and failed to obtain their signatures acknowledging the same, upon their hiring or at any time thereafter, in violation of the Wage Theft Prevention Act in effect at the time.

47. Defendants failed to provide Mr. Campos or Mr. Escobar with weekly records of their compensation and hours worked, in violation of the Wage Theft Prevention Act.

48. Upon information and belief, throughout the period of plaintiffs' employment, both before that time (throughout the Collective Action Period) and continuing until today, defendants have likewise employed other individuals like Mr. Campos and Mr. Escobar (the Collective Action Members) in positions at defendants' parking garages that required little skill, no capital investment, and with duties and responsibilities that did not include any managerial responsibilities or the exercise of independent judgment.

49. Defendants applied the same employment policies, practices, and procedures to all Collective Action Members, including policies, practices, and procedures with respect to the payment of overtime.

50. Upon information and belief, these other individuals have worked in excess of forty hours per week, yet defendants have likewise failed to pay them overtime compensation of one-and-one-half times their regular hourly rate in violation of the FLSA and the New York Labor Law.

51. Upon information and belief, these other individuals were not provided with required wage notices or

weekly wage statements as specified in New York Labor Law §§ 195.1, 195.3, and the Wage Theft Prevention Act.

52. Upon information and belief, while defendants employed Mr. Campos, Mr. Escobar, and the Collective Action members, and through all relevant time periods, defendants failed to maintain accurate and sufficient time records or provide accurate records to employees.

53. Upon information and belief, while defendants employed Mr. Campos, Mr. Escobar, and the Collective Action members, and through all relevant time periods, defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA or New York Labor Law.

## COUNT I

### (Fair Labor Standards Act - Overtime)

54. Mr. Campos and Mr. Escobar, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

55. At all relevant times, defendants employed Mr. Campos, Mr. Escobar, and each of the Collective Action Members within the meaning of the FLSA.

56. At all relevant times, defendants had a policy and practice of refusing to pay proper overtime compensation to

their employees for hours they worked in excess of forty hours per workweek.

57. As a result of defendants' willful failure to compensate their employees, including Mr. Campos, Mr. Escobar, and the Collective Action Members, at a rate at least one-and-one-half times their regular rates of pay for work performed in excess of forty hours per workweek, defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

58. The foregoing conduct, as alleged, constituted a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 260.

59. Due to defendants' FLSA violations, Mr. Campos, Mr. Escobar, and the Collective Action Members are entitled to recover from defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II

### (New York Labor Law - Overtime)

60. Mr. Campos and Mr. Escobar repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

61. At all relevant times, Mr. Campos and Mr. Escobar were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

62. Defendants willfully violated the rights of Mr. Campos and Mr. Escobar by failing to pay them overtime compensation at rates at least one-and-one-half times their regular rates of pay for each hour worked in excess of forty hours per workweek in violation of the New York Labor Law §§ 650 et seq. and its supporting regulations in 12 N.Y.C.R.R. § 142.

63. Defendants' failure to pay overtime was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

64. Due to defendants' New York Labor Law violations, Mr. Campos and Mr. Escobar are entitled to recover from defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT III

### (New York Labor Law – Wage Theft Prevention Act)

65. Mr. Campos and Mr. Escobar repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

66. At all relevant times, Mr. Campos and Mr. Escobar were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

67. Defendants willfully violated the rights of Mr. Campos and Mr. Escobar by failing to provide them with the wage notices required by the Wage Theft Prevention Act when they were hired, or at any time thereafter.

68. Defendants willfully violated the rights of Mr. Campos and Mr. Escobar by failing to provide them with weekly wage statements required by the Wage Theft Prevention Act at any time during their employment.

69. Due to defendants' New York Labor Law violations relating to the failure to provide wage statements, Mr. Campos and Mr. Escobar are entitled to recover from the defendants statutory damages of $100 per week through February 26, 2015, and $250 per day from February 27, 2015 through the end of their employment, up to the maximum statutory damages.

70. Due to defendants' New York Labor Law violations relating to the failure to provide wage notices, Mr. Campos and Mr. Escobar are entitled to recover from the defendants statutory damages of $50 per week through February 26, 2015, and $50 per day from February 27, 2015 to the termination of their employment, up to the maximum statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Campos and Mr. Escobar respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and appointing Mr. Campos, Mr. Escobar, and their counsel to represent the Collective Action members;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

c. An injunction against defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

Case 1:18-cv-04936-BCM   Document 1   Filed 06/04/18   Page 16 of 20

d. A compensatory award of unpaid compensation, at the statutory overtime rate, due under the FLSA and the New York Labor Law;

e. An award of liquidated damages as a result of defendants' willful failure to pay statutory overtime compensation pursuant to 29 U.S.C. § 216;

f. Liquidated damages for defendants' New York Labor Law violations;

g. Statutory damages for defendants' violation of the New York Wage Theft Prevention Act;

h. Back pay;

i. Punitive damages;

j. An award of prejudgment and postjudgment interest;

k. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l. Such other, further, and different relief as this Court deems just and proper.

Dated: May 29, 2018

_____
David Stein
SAMUEL & STEIN
38 West 32nd Street

Suite 1110
New York, New York 10001
(212) 563-9884
Attorneys for Plaintiffs

# EXHIBIT A

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Midtown Auto Care and its owners and affiliates to pay me, *inter alia*, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit. I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de Midtown Auto Care sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos.

_____
Guillermo Campos Velandia


Date:  April 24, 2018

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Midtown Auto Care and its owners and affiliates to pay me, *inter alia*, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit. I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de Midtown Auto Care, mi y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos.

X *Geronimo Escobar* [signature]