# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| | | |
|---|---|---|
| **DAVID STEIN**<br>dstein@samuelandstein.com | May 20, 2019 | ADMITTED IN<br>NY, NJ, PA, IL, DC |

**VIA ECF**

Hon. Barbara C. Moses, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

      Re:    <u>**Campos, et al. v. Midtown Auto Care Service, Inc. et al.**</u>
               *Docket No. 18-cv-4936 (BCM)*

Dear Magistrate Judge Moses:

      We represent named plaintiffs Guillermo Campos, German Escobar, Vinicio Redrovan, Luis Vasconez, and Eduardo Figueroa, as well as opt-in plaintiffs Henry Redrovan, Manuel Del Rio, and Alexander Atuana, in the above-captioned matter and submit this letter to the Court with the consent of Bruce H. Lederman, Esq., counsel for defendants, in accordance with the Court's Order of May 13, 2019, for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

<u>Background</u>

      Plaintiffs Guillermo Campos and German Escobar filed their original Fair Labor Standards Act complaint in this matter on June 4, 2018. (An amended complaint adding Vinicio Redrovan, Luis Vasconez, and Eduardo Figueroa as named plaintiffs was filed on August 30, 2018, and the other three plaintiffs subsequently opted in over the next several months.) The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid overtime pay, as well as claims solely under the New York Labor Law for unlawful deductions from pay, illegal tip retention, and failure to provide wage notices and wage statements.

      Specifically, the plaintiffs each alleged that they had been employed as parking lot attendants at one or more of three garages operated by defendants in Manhattan or Brooklyn. They worked for varying periods of time commencing as early as 2006 and ending as late as 2019; in terms of their work tenure that was within the statute of limitations, they worked anywhere from eight months (Mr. Atuana) to seven years (Mr. Escobar).

Hon. Barbara C. Moses, U.S.M.J.
May 20, 2019
Page 2 of 7

They alleged that they worked regular weekly schedules that ranged from 53 on the low end to 64 on the high end. Nevertheless, they were paid straight pay for all of their hours worked, at hourly rates ranging from $10.00 per hour to $15.00 per hour. In addition, plaintiffs alleged defendants would make periodic deductions from plaintiffs' pay for missing parking slips or for alleged damages to vehicles, and that when customers left tips on credit cards, defendants would refuse to distribute those tips to employees.

Based on these allegations, plaintiffs calculated their maximum damages as follows:

| Employee | Max Actual FLSA OT Owed | Max Total OT Owed | WTPA | Unauthorized Deductions | Total |
|---|---|---|---|---|---|
| Campos, Guillermo | $20,000 | $73,000 | $10,000 | $4,000 | $87,000 |
| Escobar, German | $12,000 | $53,000 | $10,000 | $4,000 | $67,000 |
| Redrovan, Vinicio | $12,500 | $36,000 | $10,000 | $3,000 | $49,000 |
| Vasconez, Luis | $13,000 | $65,000 | $5,000 | $3,000 | $73,000 |
| Figueroa, Eduardo | $18,000 | $20,000 | $10,000 | $2,000 | $32,000 |
| Redrovan, Henry | $3,000 | $6,000 | $10,000 | $1,000 | $17,000 |
| Del Rio, Manny | $1,200 | $50,000 | $5,000 | $2,000 | $57,000 |
| Atuana, Alex | $6,000 | $12,000 | $10,000 | $500 | $22,500 |
| | | | | | $404,500 |

(The above figures, which are rounded, do not include damages for unlawfully retained tips; plaintiffs did not have the information to estimate those damages, but believed them, ultimately, to represent a relatively small number.) In other words, plaintiffs would be owed a maximum of about $405,000 in damages, plus some small additional amount for retained tips, if everything went perfectly for them at trial.

## Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiffs' wage and hour claims against defendants for a total of $395,000. (Each plaintiff will receive a share of this figure pro-rated based on the above estimated damage calculations, as specified in the Agreement.) This final settlement amount is close to plaintiffs' maximum possible recovery, and plaintiffs believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of their claims and the risks attendant with continuing the litigation.

The primary issue was that plaintiffs' calculations were based on the assumption that they worked their full schedules without fail, 52 weeks per year each year of their employment, with not a single vacation day, sick day, or holiday. Plaintiffs had no records of their own to support this assumption, and defendants had time cards for at least a portion of plaintiffs' employment

that suggested (not surprisingly) that plaintiffs sometimes missed shifts over a multi-year period. Moreover, the numbers included in plaintiffs' damages calculations were based on very broad estimates based on the tenure of each employee. Actually establishing these figures — records were essentially nonexistent — would have presented a challenge.

By settling at this juncture, plaintiffs were able to get the bulk of what they were potentially owed without having to sit through depositions, and without the delay of waiting for trial or the risks attendant with trial. Moreover, plaintiffs will receive their payments as a single lump sum, rather than forcing plaintiffs to deal with an installment plan. Thus, plaintiffs decided to accept defendants' offer.

### FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id.* at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiff suggests that they weigh in favor of settlement approval. The total settlement amount is 97% of plaintiffs' maximum possible recovery, and even after attorneys' fees, plaintiffs will each be receiving complete recovery of their claimed actual <u>and</u> liquidated FLSA damages, and indeed 100% of their actual overtime damages under the FLSA <u>and</u> NYLL. They will receive these funds without running any risk or having to prove their claims.

Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net

Hon. Barbara C. Moses, U.S.M.J.
May 20, 2019
Page 4 of 7

settlement of 43% of FLSA plaintiff's maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016)(net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiffs are experienced wage-and-hour litigators, and in consultation with plaintiffs they thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Plaintiffs no longer work for defendants, so there is no risk they will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case, despite being given an opportunity to join the collective action. Additionally, this case presents no novel questions of law that would benefit from extensive litigation; the issues in this case are factual.

Pursuant to counsel's retainer agreement with plaintiffs, we will be reimbursed for out-of-pocket expenses of $1,053.43 (filing fee, service of process, court reporter, interpreter, and subway)[1] and will retain 1/3 of the net settlement (i.e., an additional $131,315.52) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with

---

[1] The Court can take judicial notice of the filing fee; receipts for service of process, court reporter, and interpreter, are attached as Exhibit C.

`contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

This figure represents a figure of roughly 3.59 times our lodestar (described below). While that is on the higher end of multipliers in FLSA contingency litigation, it is within the range of that which is approved. *See, e.g., Pinzon v. Jony Food Corp.*, 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (approving a 5.23 multiplier in an FLSA case); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six"); *Riveras v. Bilboa Rest. Corp.*, 17-cv-4430 (LTS)(S.D.N.Y., Dec. 14, 2018)(approving 6.7 multiplier).

Moreover, to reduce the near-standard one-third contingency fee merely because it represented a significant multiplier over lodestar would penalize counsel for litigating the case efficiently. We could have increased our lodestar in this case (and thus reduced the multiplier) by refusing to enter into settlement negotiations when we did; this case settled on the eve of depositions. Plaintiffs were preparing to depose two individuals and three business entities, while defendants had noticed the depositions of all eight plaintiffs herein. Doing so, however, would have been litigating the case purely for the purpose of earning attorneys' fees, rather than for the benefit of the plaintiffs. See, e.g., *Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting *McDaniel v. County. of Schenectady*, 595 F.3d 411, 418 (2d. Cir. 2010)) (holding that the percentage method is appropriate because it "avoids the lodestar method's potential to 'create a disincentive to early settlement.'") And in thjs case, the degree of success achieved by plaintiffs was extraordinarily high.

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure reflects the reasonableness of the percentage recovery; it was calculated as follows:

| Attorney | Class | Rate[2] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 46.20 | $17,475.00 |
| David Nieporent | Senior Associate | $325 | 58.80 | $19,110.00 |
| **TOTAL** | | | 105.00 | $36,585.00 |

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and

---

[2] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125, and travel was, as per firm policy, billed at half.

Hon. Barbara C. Moses, U.S.M.J.
May 20, 2019
Page 6 of 7

I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

     These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation"). And, indeed, we have been awarded fees of precisely the above rates by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016) and Judge Bricetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018), and Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 16-cv-6040 (AT), Docket Entry 84 (September 28, 2018), and Judge Oetken in *Zhu v. Salaam Bombay, Inc., at al.*, 16-CV-4091 (JPO), 2019 WL 76706 (January 2, 2019). And in the Eastern District, where the rates are a bit lower, we were awarded fees last year of $375 and $325 in a wage and hour case, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (N.Y.E.D. May 24, 2018).

     Moreover, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

     For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

                                                      Very truly yours,

                                                      David Stein

Hon. Barbara C. Moses, U.S.M.J.
May 20, 2019
Page 7 of 7

Enc.

cc:  Bruce H. Lederman, Esq. (via ECF)